Beejamih Gassmau,
Acting Judge. This motion is in the nature of a writ of error coram nobis. The defendant seeks to set aside a conviction by a plea of guilty on March 7, 1955, at which time, confronted with an indictment charging him with the crime of murder in the first degree, he pleaded guilty to murder in the second degree. In his petition he states “ that this application is brought upon the grounds that at the time your petitioner was convicted for the crime of Murder, Second Degree, his conviction was procured by fraud, misrepresentation and intimidation which your petitioner’s right to due process of law under the Constitutions of New York and the United States having been violated.”
The record indicates the following facts: On August 12, 1954 the defendant was indicted for the crime of murder in the first degree. On August 18,1954 a notice of appearance was filed by the defendant’s attorney, Oscar Gonzalez Suarez. On December 1. 1954 the defendant pleaded not guilty to the indictment and thereafter, on March 7, 1955, with his counsel present in court and at his side, through the official Spanish interpreter of the *300 court, the defendant pleaded guilty before Judge Edward F. Breslin to the crime of murder in the second degree. The minutes taken on the said date show that Ferdinand Falzano, the official Spanish court interpreter, was present in court and acted as interpreter throughout the proceedings, and that all questions and statements were interpreted by him to the defendant and all of the defendant’s answers were interpreted by him in turn in English. The minutes also show that Judge Bresliw questioned the defendant in detail with respect to the crime, as appears from the following excerpts therefrom:
The Clerk: Leo Munoz to the Bar. Leo Munoz, do you speak English?
Defendant: A little bit.
Mr. Suarez: May it please the Court, at this time the defendant Leo Munoz respectfully asks for permission to withdraw his plea of not guilty entered heretofore and for permission to plead guilty to Murder in the Second Degree in satisfaction of the indictment.
Mr. Dermody: The People respectfully recommend the acceptance of that plea to the Court.
The Court: Leo Munoz, do you understand any English at all?
Defendant: A little.
The Court: All right. You will interpret, Mr. Interpreter. Your attorney has indicated that you are now prepared to plead guilty to the crime of Murder in the Second Degree to cover all counts in this indictment, is that your wish?
Defendant: Yes, sir.
The Court: You have discussed this case with your lawyer, is that right?
Defendant: I did discuss this ease with my lawyer.
The Court: As a matter of fact, you discussed it this morning with him and with some of your relatives present, did you not?
Defendant: Yes.
The Court: The charge is that on July 31st last, around a quarter after three in the morning, in front of premises 1733 Lexington Avenue, you stabbed one Mercedes Conde in the stomach with a knife that you then held in your hand: that you stabbed that girl on that occasion?
Defendant: I understand.
The Court: Did you stab the girl?
Defendant: Yes, Your Honor.
The Court: Where did you stab her?
Defendant: In the stomach.
The Interpreter: Your Honor, this defendant would say something.
The Court: What do you want to say?
I stabbed her to kill her because she insulted me. She tried to Defendant: slap me.
The Court: And when you stabbed her you did intend to kill her, is that right?
Defendant: Yes, sir.
The Court: According to this report I have before me, this girl was walking along the street with her two sisters, one of them younger than she — as a matter of fact, as I understand it, she was about 13 years of age and the other one was older, and, according to the report I have before me, you made some obscene remark to these girls.
Defendant: It is true, Your Honor.
*301 The Court: And according to this report, the girls started to cross the street to get away from you and you threw a bottle at them as they were crossing the street?
Defendant: It is so.
The Court: And you followed across the street and while one of the girls, the oldest girl, went into a bar and grill to get some help you walked up to this girl, Mercedes, and plunged a knife in her stomach.
Defendant: It is so, Tour Honor.
The Court: I still want to know whether when you plunged this knife into this girl’s stomach you intended to kill her and if you did, why you did it? Defendant: I was drunk. I said something dirty to her and she called my attention and I pulled out the knife and I stabbed her to kill her.
The record further shows that sentence was set for April 4, 1955 and that it was thereafter adjourned on a number of occasions, at the defendant’s request, to May 24, 1955; that on the latter date, with his attorney at his side and Natale Collesano, the official Spanish interpreter present, the defendant moved to withdraw his plea of guilty and the following colloquy ensued between the court and the defendant’s attorney:
Mr. Suarez: May I say this, Tour Honor; At this time the defendant respectfully asks permission to withdraw his plea of guilty entered heretofore and to have his plea of not guilty reinstated.
Since the time that he pleaded to Murder in the Second Degree he has had a change of heart and I feel it is my duty to express this to the Court and make it part .of the record. This is his expressed wish now, to withdraw the plea of guilty.
The Court: I know that is his wish, but what do you predicate it upon, sir? That is not ground for withdrawing it, just because he wants to withdraw it.
Mr. Suarez: May I say this, Tour Honor. At the time the plea was taken he made a foolish statement before this Court and in the discharge of my duty I was compelled to tell him the consequences of that plea and the sentence to be expected. He feels at this time that the sentence, according to law that is to be passed upon him is too severe for the nature of the crime for which he has been charged.
The Court: Well, I questioned him, as I recall it, at the time this plea was taken and he admitted his guilt. He admitted that he had stabbed this young lady without provocation — repeat this to him — but excused it by saying that he had been drinking at the time.
Defendant: Well, I am willing to.abide with this plea, but the point is that I want to get married with this girl, the woman involved here. I want to get married.
The Court: Who is this girl he is talking about now?
Mr. Suarez: That’s the woman with whom he is living in common law relationship, Tour Honor.
The Interpreter: He wants to marry this woman with whom he has been living a long time, nine years. He says he is willing to let the plea stay.
The Court: He is willing to let the plea stand, but he wants to get married, is that it?
Well, as long as you made your motion, you say you want the plea to stand. Tou don’t want to withdraw your plea, is that it, Munoz?
Defendant: Tes, sir.
*302 Thereafter, on May 27, 1955 the motion to withdraw the plea was denied and the defendant was sentenced to State prison for a term of not less than 20 years nor more than his natural life.
As a second ground for the relief sought by the defendant he alleges in his petition that ‘ ‘ He did not know that twenty years to natural life was the statutory minimum for the crime.” However, as appears from the minutes of March 7, 1955, Judge Bebsliit advised the defendant of the consequences which would follow his plea in the following language:
The Court: You understand that under this plea the Court can impose and must impose a minimum sentence of twenty years and a maximum of life imprisonment. Do you understand!!
Defendant: I understand that.
It thus appears that each of the grounds urged by the defendant in .support of his present motion is not alone not substantiated by the record, but is decisively contradicted.
Postconviction relief by way of coram nobis is available to a defendant only where either the court or the prosecutor, through any act on their part, brought about a denial of justice or did anything which may have resulted in a denial of justice to a defendant. As appears from the foregoing excerpts, the record clearly discloses that before the court accepted the defendant’s guilty plea to a reduced crime he questioned the defendant through a Spanish speaking official interpreter, and I cannot overlook the fact that Mr. Oscar Gr. Suarez, the defendant’s own retained counsel, was then at his side, and that he speaks Spanish fluently. The minutes taken on the day of pleading show conclusively that the defendant understood all that transpired and that he admitted his guilt in open court. His present claim that the plea “ was procured by fraud, misrepresentation and intimidation ” or that he did not discuss “ the case or the matter ” with his lawyer is not borne out by the record. Nor is there any substance to his present claim that he did not know that the court would impose the sentence that it did upon him, for, as was pointed out, the court specifically warned the defendant of the sentence which would be imposed. Not alone did the court not do anything which impinged in the slightest on the defendant’s rights, but it did everything within its power to determine whether the defendant’s plea of guilty to a reduced charge in a case where he might well have been convicted of murder in the first degree was made by the defendant of his own free will, and with a full understanding of what he was doing. He was represented by competent counsel, who spoke Spanish, and the court was warranted in concluding that when the defendant pleaded guilty after consultation with his counsel that the latter *303 had reasonably satisfied himself of the defendant’s guilt (People v. Tomaselli, 7 N Y 2d 350, 355).
There is no basis for defendant’s motion. Accordingly, the motion is in all respects denied without a hearing.